```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEENU GEORGE HOFFMAN              :     CIVIL ACTION
                                  :
          v.                      :
                                  :
TYCO INTERNATIONAL, LTD., et al.  :     NO. 06-2961
```

MEMORANDUM

Bartle, C.J.                                    December 18, 2006

       Plaintiff Meenu George Hoffman ("Hoffman") brings this employment discrimination action against her former employer Tyco Healthcare Retail Group, Inc. ("Tyco Retail"), as well as against defendants Tyco Healthcare Group, L.P. ("Tyco Healthcare"), and Tyco International, LTD. ("Tyco International"). Hoffman is suing under: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), *et seq.*; (2) 42 U.S.C. § 1981; and (3) the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq*. Now before the court is the motion of Tyco International to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

       Hoffman's claims of race, color, national origin, and sex discrimination arise out of alleged discriminatory conduct engaged in by her supervisors at Tyco Retail and alleged

retaliatory conduct engaged in by Tyco Retail and Tyco Healthcare after Hoffman complained of the discrimination to Richard Baran, Tyco International's Corporate Ombudsman (the "Ombudsman").  Tyco Retail is a wholly-owned subsidiary of Tyco Healthcare which, in turn, is a wholly-owned subsidiary of Tyco International.  Neither Tyco Retail nor Tyco Healthcare disputes that this court has personal jurisdiction over them with respect to this action.  Tyco International, which does challenge personal jurisdiction, is a Bermuda corporation with its principal place of business in Hamilton, Bermuda.  It is a holding company for various domestic and foreign corporations.

## I.

A federal district court may exercise *in personam* jurisdiction over a non-resident defendant to the extent allowed by the laws of the forum state.  Time Share Vacation Club, 735 F.2d at 61, 63 (3d Cir. 1984).  Pennsylvania's long-arm statute permits a court to assert jurisdiction over a non-resident "to the fullest extent allowed under the Constitution of the United States."  42 Pa. Con. Stat. Ann. § 5322(b).

The Due Process Clause of the Fifth Amendment "shields persons from the judgment of a forum with which they have established no substantial ties or relationship."  General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Personal jurisdiction may be asserted over a non-resident defendant only if two requirements are met.  The defendant must have minimum contacts with the forum "such that [it] should reasonably

anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). In addition, "the maintenance of the suit [may] not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

A court may exercise personal jurisdiction over a defendant corporation if the corporation has either specific or general contacts with the forum. Deutz, 270 F.3d at 150. Specific jurisdiction requires that the cause of action arise out of or be related to the defendant's forum-related activities. BP Chem., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 1990). To exercise specific jurisdiction over a corporation, the corporation must have purposefully directed its activities toward the forum state, such that it "invok[es] the benefits and protections of [that state's] laws." Burger King v. Rudzewicz, 471 U.S. 462, 473 (1985), citing Hanson v. Denckla, 357 U.S. 235, 253 (1958). General jurisdiction, on the other hand, does not require "the contacts between the defendant and the forum [to] be specifically related to the underlying cause of action." Pinker v. Roche Holding, Ltd., 292 F.3d 361, 368 n.1 (3d Cir. 2002). Instead, *in personam* jurisdiction over the defendant arises when the defendant's activities in the forum state are both "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

II.

Hoffman first argues that Tyco International's involvement with Hoffman's internal discrimination complaint provides the basis for specific jurisdiction over it.  In or about the first week of October, 2003, Hoffman called the Ombudsman, located in Bermuda, to register a complaint of discrimination.  Hoffman made this call after making a September, 2003 complaint to her manager, presumably in Pennsylvania.  The Tyco Guide to Ethical Conduct requires a Tyco employee to use a 1-800 number to contact the Ombudsman if she had complained to her manager about discrimination and had not received a satisfactory response.  After hearing her allegations of discrimination, the Ombudsman told Hoffman that an investigation would be conducted and requested that she call him again later that week "so that he could involve the Senior Vice President of Human Resources of Tyco Healthcare, Allen Todres."  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 4.  She did call, but does not allege that Todres was on the line during the second call.

Todres ultimately interviewed several employees in Pennsylvania about Hoffman's complaints.  He met with the alleged perpetrators of the discrimination and the Vice President of Human Resources for Tyco Retail and alerted them to the content of the complaints.  Hoffman alleges that the discriminatory conduct against her immediately escalated to the point where she sought medical treatment and, on the advice of her doctor, resigned her employment with Tyco Retail on or about July 15, 2004.  Hoffman claims that Tyco International's conduct, as

-4-

described above, makes it the "keystone" of her complaint.  Id. at 8.

As noted above, the relevant minimum contacts necessary to obtain specific jurisdiction over a corporation must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson, 357 U.S. at 253; see also Burger King, 471 U.S. at 473.  Plaintiff's proof of Tyco International's involvement consists of Hoffman's two phone calls from Pennsylvania to Tyco International's Ombudsman's office in Bermuda.  Clearly, these phone calls cannot be used to show that Tyco International directed its activities toward Pennsylvania.  Hoffman additionally claims, without any evidentiary support, that "[the Ombudsman] worked intimately with [Mr.] Todres," who traveled to Pennsylvania on several occasions to investigate Hoffman's complaints.  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 9.  Hoffman, however, offers no other information about the Ombudsman's involvement in the investigation or his contacts with Pennsylvania related to the investigation and provides nothing of record to tie Tyco International to any discriminatory conduct.

At least one other court has found, albeit in the context of general jurisdiction, that the maintenance of a hotline for the use of employees alone will not subject a corporation to personal jurisdiction.  In Management Insights, Inc. v. CIC Enterprises, Inc., the plaintiff alleged that

personal jurisdiction was proper over the defendant because, among other reasons, the defendant operated a "Carl's Junior telephone hotline, which allows employees of the restaurant chain to 'report problems with management, sexual harassment[,] and the like,'" when Carl's Junior had eighteen locations (and was subject to personal jurisdiction) in Texas.  194 F. Supp. 2d 520, 528 (N.D. Tex. 2001).  The Northern District of Texas rejected the contention that the operation of the hotline would allow that court to exercise personal jurisdiction over the defendant.  Id.  The court found that the mere fact that the hotline was accessible in Texas did not mean that the defendant was purposefully aimed at Texas residents.  Id.

The court in Management Insights referred to a Kansas case in which the plaintiff tried to establish specific jurisdiction over the defendant by alleging that the defendant was doing business in the state of Kansas.  Composite Marine Propellers, Inc. v. VanDerWoude, 741 F. Supp. 873, 876 (D. Kan. 1990).  The defendant had a 1-800 number, which customers, including those in Kansas, could use to place orders for defendant's products.  Id. at 875-76.  Calls from the number were answered by a receptionist in Illinois.  Id.  The court did not know how many Kansas residents had ordered defendant's products through the 1-800 number.  Id.  The District of Kansas found that although the telephone number was accessible in Kansas, the maintenance of the line without more contacts was insufficient to

provide Kansas with specific jurisdiction over the defendant. Id.

The same logic applies to the instant case. All we know is that Tyco International operates the 1-800 line for employees of its subsidiaries, wherever they may be, and that Hoffman used the hotline to make two calls from Pennsylvania to Tyco International in Bermuda. These facts, in and of themselves, are not sufficient to confer specific personal jurisdiction over the parent corporation. Tyco International has simply not purposefully directed its activities toward Pennsylvania. Burger King, 471 U.S. at 473; Hanson, 375 U.S. at 253.

### III.

Nor does Tyco International have minimum contacts with Pennsylvania to justify the exercise of general jurisdiction over it, as also alleged by Hoffman. Tyco International is not authorized, chartered, licensed, or otherwise registered to do business in the Commonwealth of Pennsylvania. It has not transacted any business in Pennsylvania and has no employees, operations, facilities, or real or personal property in Pennsylvania. Hoffman, however, alleges that Tyco International is subject to general jurisdiction in Pennsylvania because of the contacts of its subsidiaries, Tyco Healthcare and Tyco Retail.

The mere fact that a state has *in personam* jurisdiction over a subsidiary corporation does not automatically give that state jurisdiction over a nonresident parent corporation. Lucas

v. Gulf & Western Industries, Inc., 666 F.2d 800, 805-06 (3d Cir. 1981) (abrogated on other grounds); See also Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 336 (1925).  However, plaintiff may overcome the application of this general rule by showing a reason to impute the subsidiaries' contacts to the parent. Lucas, 666 F.2d at 806; Action Mfg. Co., Inc. v. Simon Wrecking Co., 375 F. Supp. 2d 411, 420 (E.D. Pa. 2005).  In this case, Hoffman alleges that the corporate veil should be pierced and jurisdiction imputed because Tyco Healthcare and Tyco Retail are merely the alter ego of Tyco International.  See id.

"When it applies, [a plaintiff] may use the alter ego doctrine to secure jurisdiction over nonresident corporations upon a finding that either the 'dominant' or 'subservient' corporation does business within the state." Oeschle v. Pro-Tech Power, Inc., 2006 U.S. Dist. LEXIS 10223, at *12 (E.D. Pa. Mar. 15, 2006) (citation omitted); see also, Botwinick v. Credit Exchange, Inc., 419 Pa. 65 (Pa. 1965).  Here, Tyco Healthcare and Tyco Retail both do business in and are indisputably subject to general jurisdiction in Pennsylvania.

In determining whether to impute a subsidiary's jurisdictional contacts to its nonresident parent, a court should "examine all relevant factors that relate to the intimacy of the relationship between the parent and subsidiary."  Arch v. American Tobacco Co., Inc., 984 F. Supp 830, 837 (E.D. Pa. 1997). Our Court of Appeals has articulated factors to consider when a plaintiff seeks to pierce the corporate veil to hold a parent

corporation responsible for the liabilities of its subsidiary. See Pearson v. Component Technology Corp., 247 F.3d 471 (3d Cir. 2001). Although the imputation of liability is different than the imputation of jurisdiction, this court has previously noted that the same factors should be considered in both contexts. Action Mfg. 375 F. Supp. 2d at 421 n.13; Arch, 984 F. Supp at 837. Among the factors to consider under the alter ego test are:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

Pearson, 247 F.3d at 484-85. In sum, a plaintiff may demonstrate an alter ego relationship between parent and subsidiary "by demonstrating that the degree of control exercised by the parent is greater than normally associated with common ownership and directorship." Action Mfg., 375 F. Supp. 2d at 422 (citations omitted).

Hoffman fails to address any of the specific Pearson factors. She argues that Tyco International exercised such a high amount of control over Tyco Healthcare and Tyco Retail that an alter ego relationship should be found to exist between them. In support of this contention, Hoffman cites the following relationship between Tyco International and its subsidiaries: SEC filings show that the stock owned by Hoffman and other employees of Tyco Healthcare and Tyco Retail is Tyco

International stock; the Board of Directors of Tyco International is the only Board governing Tyco International's subsidiaries; Tyco International and its subsidiaries use a common marketing image and trademark logo; in one case, there seems to have been a common use of employees between Tyco International and its subsidiaries; Tyco International's financial statements include the accounts of Tyco Healthcare and Tyco Retail; the employees of Tyco International's subsidiaries are to use a single Guide to Ethical Conduct, distributed by Tyco International; and Tyco International and its subsidiaries share a common website.  Other than the two noted citations to Tyco International's SEC filings, Hoffman either has no support for her allegations or cites Tyco International's website.

Even assuming that we may consider as evidence Hoffman's references to the Tyco International website, we find that such references are insufficient for this court to exercise personal jurisdiction over Tyco International.  "An alter ego relationship is typified by parental control of the subsidiary's internal affairs or daily operations."  Action Mfg., 375 F. Supp. 2d at 422, citing Doe v. Unocal Corp., 248 F.3d 915 (9th Cir. 2001).

Overall, Hoffman has not established that Tyco International exerts any control over the internal workings or day-to-day operations of its subsidiaries.  Hoffman, for example, asserts that Tyco International controls Tyco Healthcare or Tyco Retail because the subsidiaries do not have independent boards of

directors. Tyco International disputes this assertion. It maintains that Tyco Retail has its own Board of Directors and that Tyco Healthcare is a limited partnership which has corporate partners with its own Board of Directors. In an affidavit, M. Brian Moroze, Deputy General Counsel for Tyco International, states that "Tyco International is an independent and separate corporate entity distinct from defendant Tyco Healthcare Group LP and defendant Tyco Healthcare Retail Group, Inc. Tyco International does not have identical officers, directors, and shareholders as these defendants." Hoffman's only support for her allegation is the Tyco International website. However, there is nothing on the website stating anything about the boards of directors of the subsidiaries or about the governance of the subsidiaries by the board of Tyco International.

Given Hoffman's lack of evidence, we will not impute to Tyco International the contacts of its subsidiaries with Pennsylvania.

IV.

In sum, we find that Hoffman has not met her burden of establishing that the court has personal jurisdiction over Tyco International. Thus, we will grant the motion of Tyco International to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEENU GEORGE HOFFMAN              :      CIVIL ACTION
                                  :
            v.                    :
                                  :
TYCO INTERNATIONAL, LTD., et al.  :      NO. 06-2961
```

ORDER

AND NOW, this 18th day of December, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Tyco International, Ltd. to dismiss for lack of personal jurisdiction is GRANTED.

                                        BY THE COURT:


                                        /s/ Harvey Bartle III
                                                            C.J.